UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| (1) SOURCEPROSE CORPORATION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. __1:16-cv-00516__ |
|  | ) |
| (2) RPX CORPORATION, | ) JURY TRIAL DEMANDED |
|  | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff SourceProse Corporation, ("Plaintiff" or "SourceProse"), by and through its attorneys, submit this Complaint and hereby makes the following allegations and claims against Defendant RPX Corporation ("Defendant" or "RPX").

### I.   JURISDICTION AND VENUE

1. This action arises under Texas law and, through this action, Plaintiff seeks damages for breach of contract or promissory estoppel.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

3. As provided by 28 U.S.C. § 1391, venue is proper within the Western District of Texas because a substantial part of the events that give rise to the claim occurred in this district.

4. This Court has personal jurisdiction over Defendant because Defendant has sufficient contacts with the State of Texas, including but not limited to initiating and conducting the negotiation and performance of the contract at issue, which relates to litigation in this district, and causing damage in Texas by breaching the contract with Plaintiff, who is a citizen of Texas.

## II.   THE PARTIES

5. Plaintiff is a corporation organized and existing under the laws of the State of Texas. Plaintiff has its principal place of business in Dallas, Texas. Based upon the foregoing, Plaintiff is a citizen of the State of Texas.

6. Defendant is a corporation organized and existing under the laws of the State of California. Defendant has its principal place of business in San Francisco, California. Based upon the foregoing, Defendant is a citizen of the State of California.

## III.   FACTUAL BACKGROUND

7. SourceProse is the owner by assignment of the following:

   a. U.S. Patent No. 6,631,326, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on October 7, 2003;

   b. U.S. Patent No. 6,678,615, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on January 13, 2004;

   c. U.S. Patent No. 6,842,698, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on January 11, 2005;

   d. U.S. Patent 7,038,681, entitled "SYSTEM AND METHOD FOR GEOREFERENCING MAPS," duly and legally issued on May 2, 2006;

  e. U.S. Patent No. 7,142,217, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on November 26, 2006;

  f. U.S. Patent No. 7,148,898, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on December 12, 2006;

  g. U.S. Patent No. 7,161,604, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on January 9, 2007;

  h. U.S. Patent No. 7,167,187, entitled "SYSTEM AND METHOD FOR GEOREFERENCING DIGITAL RASTER MAPS USING A GEOREFERENCING FUNCTION," duly and legally issued on January 23, 2007; and

  i. U.S. Patent No. 7,190,377, entitled "SYSTEM AND METHOD FOR GEOREFERENCING DIGITAL RASTER MAPS WITH RESISTANCE TO POTENTIAL ERRORS," duly and legally issued on March 13, 2007.

(Hereafter, referred to, collectively, the "Patents"). SourceProse has full and exclusive right to bring suit to enforce the Patents.

  8. RPX is "the leading provider of patent risk solutions, offering defensive buying, acquisition syndication, patent intelligence, insurance services and advisory services." RPX acquires patents and patent rights and grants licenses to its clients to use the same. As of September 30, 2015, RPX had invested nearly $2 billion to acquire more than 10,000 US and international patent assets and rights on behalf of more than 220 clients in eight key sectors: automotive, consumer electronics and PCs, E-commerce and software, financial services, media content and distribution, mobile communications and devices, networking, and semiconductors.

9. On February 11, 2011, SourceProse, as plaintiff, filed Case No. 1:11-cv-00117 in the Western District of Texas against five (5) major mobile telephone carriers, AT&T, Inc. ("AT&T"), MetroPCS Communications, Inc. ("MetroPCS"), Sprint Nextel Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), and Cellco Partnership, d/b/a Verizon Wireless ("Verizon") for infringement of the Patent Nos. '217 and '604 (the "Patent Litigation") (collectively, the "earlier Defendants").

10. Three (3) of the five (5) Defendants, MetroPCS, T-Mobile, and Verizon, are clients of RPX (the "RPX Defendants").

11. On February 25, 2015, Ryan Elliot ("Elliot"), Director of Acquisitions for RPX, called Houston, Texas attorney, Matthew Prebeg, ("Prebeg"), SourceProse's attorney of record in the Patent Litigation, to discuss a possible settlement of the Case by acquisition of the Patents by RPX for its clients, several of whom were defendants in the Patent Litigation.

12. On March 5, 2015, SourceProse and RPX entered into a Mutual Nondisclosure Agreement, ("NDA") to permit the free exchange of certain information necessary to further sale/settlement discussions.

13. On April 13, 2015, Prebeg and Christopher Faucett ("Faucett"), another of SourceProse's counsel in the Patent Litigation, met with Elliot in California to discuss the Patent Litigation and RPX's acquisition of the Patents, (the "April 13 Meeting"). Eric Olsen, RPX's Senior Vice President of Acquisitions ("Olsen"), was also present for part of this meeting.

14. During the April 13 Meeting, Elliot offered to license the Patents for three million dollars ($3,000,000.00), thereby providing RPX's clients who were parties to the Patent Litigation a right to use the Patents and ending the Patent Litigation against them. The terms of the offer allowed SourceProse to maintain the right to take action against non-RPX clients for infringement of the Patents. According to Elliot, RPX had previously made this type of agreement with other patent holders in similar situations.

15. During the April 13 Meeting, SourceProse agreed to all material terms of the agreement proposed by Elliot, except for the purchase price. SourceProse demanded $4.2 million for the Patents and settlement of the Patent Litigation against RPX's clients. Elliot asked for more time to increase the monetary offer of the Settlement.

16. Prior to the conclusion of the April 13 Meeting, Elliot requested that future communications between RPX and SourceProse not be in writing so that nothing could be discoverable by third-parties.

17. On April 23, 2015, Elliot informed Faucett that RPX had increased the offer to $3.5 million under the same terms as were laid out in the April 13 Meeting. Faucett told Elliott that RPX's offer needed to be higher.

18. On May 4, 2015, Elliot called to Prebeg, and told him that RPX would confirm the dollar amount of its offer within the next week or two.

19. On May 6, 2015, Elliot confirmed via telephone call to Faucett that RPX's would not increase its offer from $3.5 million. Faucett told Elliot that SourceProse wanted $4 million. Elliot said that he could get more money to offer with more time. During this conversation, Faucett told Elliot that discovery deadlines in the Patent Litigation were

5

approaching and that SourceProse needed RPX's final dollar amount before Friday, May 8, 2015 so that SourceProse could decide whether to accept the offer or proceed with the Patent Litigation.

20. On Friday, May 8, 2015, Faucett and Elliot spoke via telephone at or around 2:00 pm Central Standard Time. During this call, Faucett informed Elliot that SourceProse's Board of Directors was standing by to make a decision on the settlement offer with RPX to sell the patents. Faucett told Elliot that if the Board accepted the offer made by RPX, SourceProse would stand down on discovery in the Patent Litigation. Elliot, for the first time, told Faucett that he could not offer the $3.5 million that he had previously promised, but that RPX was now offering just $3 million.

21. Faucett conveyed RPX's offer to SourceProse's Board of Directors, who then authorized him to accept the $3 million offer.

22. At approximately 2:30 pm Central Standard Time on May 8, 2015, (half an hour after the $3 million offer was made), Faucett called Elliot and told him that SourceProse accepted RPX's offer of $3 million under the structure as initially discussed in the April 13 Meeting, and reaffirmed in subsequent conversations (the "2:30 Phone Call").

23. During the 2:30 Phone Call, Elliot acknowledged that an agreement had been reached between RPX and the SourceProse with regard to the Patents and the Patent Litigation as to RPX's clients, (the "Sale/Settlement Agreement"), but asked that SourceProse wait to inform opposing counsel and the Court in the Patent Litigation of the settlement. Elliott explained that this was necessary because RPX's upper management

needed to "officially announce" the agreement. Elliot said that representatives of all of RPX's members were currently in San Francisco attending RPX's annual meeting with members, and that the RPX representatives who could make the official announcement were meeting with RPX members.

24. Shortly after the 2:30 Phone Call, Elliot called Faucett to inform him that RPX's Chief Operating Officer had given consent for SourceProse to inform opposing counsel in the Patent Litigation of the Sale/Settlement Agreement, but that RPX's CEO still needed to give his authorization for the announcement.

25. At Elliot's request, SourceProse agreed to refrain from making any announcements or filings with the Court in the Patent Litigation until May 11, 2015.

26. On May 8, 2015, in reliance on the Sale/Settlement Agreement, SourceProse informed RPX that it would cease all further work on the Patent Litigation, since SourceProse could no longer continue the litigation by virtue of the Sale/Settlement Agreement.

27. On the morning of May 11, 2015, Faucett sent a text message to Elliot to inquire as to when RPX would officially announce the Sale/Settlement Agreement. Elliot replied by text message that he would let Faucett know as soon as the announcement was officially made. Elliot gave no indication at this time that the Sale/Settlement Agreement was not in place between the parties. Faucett agreed to wait for one more day before informing opposing counsel in the Patent Litigation of the Sale/Settlement Agreement

28. On the afternoon of May 11, 2015, Elliot called Faucett to inform him that Google was trying to back out of "the deal," and that Elliot was concerned that Google may

have withdrawn its support of the Sale/Settlement Agreement. This was the first time SourceProse received any indication that Google, who was a Shareholder of RPX, was, in any way, involved with the Sale/Settlement Agreement and led SourceProse to believe that RPX had shared SourceProse's confidential information with Google in violation of the NDA.

29. On May 12, 2015, Faucett sent an e-mail to Elliot, which was also copied to Olsen, stating SourceProse's belief that it was under an obligation to inform opposing counsel in the Patent Litigation of the Sale/Settlement Agreement, under which RPX agreed to settle the Patent Litigation on behalf of all defendants and Google (the "May 12 Email"). Faucett advised Elliot that, even without an announcement by RPX, unless he received a response by 5:00 pm Central Standard Time on May 12, 2015, SourceProse would advise opposing counsel of the Sale/Settlement Agreement, under which SourceProse no longer had the right to assert the claims made in the lawsuit.

30. In response to the May 12, 2015 e-mail, Elliot called Faucett to inform him that RPX had still made no official announcement and that SourceProse would not be hearing anything further from RPX by the deadline set forth in the May 12 Email. SourceProse received no other response. Notably, Elliot did *not* inform Faucett that RPX was denying the existence of an agreement for the purchase of the Patents and settlement of the Patent Litigation.

31. On May 12, 2015, Plaintiff, having received no instruction or request from RPX to the contrary, notified opposing counsel in the Patent Litigation that SourceProse had entered into a confidential agreement with a third party which would settle the Patent

Litigation, and that SourceProse would stand down on discovery and would be working in the coming days to arrange for the dismissal of the case.

32. On May 14, 2015, Faucett e-mailed Elliot again, asking when RPX would announce the Sale/Settlement Agreement and providing wire transfer instructions for the $3 million agreed upon sale price.

33. On May 14, 2015, Elliot responded to Faucett's email stating, for the first time, that there was no agreement between RPX and SourceProse, and that RPX did not intend to perform. Elliot further asked that Faucett refrain from contacting RPX in the future.

34. Due to their reliance on existence of the Sale/Settlement Agreement, SourceProse had already cancelled the May 14, 2015 deposition of Jim Brooks, one of Google's witnesses who had knowledge a key issue in the Patent Ligation. Indeed, by the time that RPX informed SourceProse that it was backing out of the deal, Mr. Brooks was unavailable, having left for a one-year paternity leave. Thus, there was no way for SourceProse to get Mr. Brooks' deposition rescheduled before the June 1, 2015 discovery deadline in the Patent Litigation.

35. RPX's refusal to honor the terms of the Sale/Settlement Agreement materially and substantially prejudiced SourceProse in the Patent Litigation.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT
### (Mutual Nondisclosure Agreement)

Plaintiff incorporates by reference the paragraphs set forth above and further alleges:

36. Pursuant to the NDA, RPX was prohibited from sharing SourceProse's confidential information with non-parties.

37. RPX breached the NDA by sharing SourceProse's confidential information with non-party Google and, perhaps, others.

38. SourceProse has suffered damages in excess of seventy-five thousand dollars ($75,000.00) as a result of the breach.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT
### (Sale/Settlement Agreement)

Plaintiff incorporates by reference the paragraphs set forth above and further alleges:

39. The Agreement described above between Plaintiff and Defendant constitutes a valid contract under the laws of the State of Texas.

40. RPX breached that contract.

41. Due to RPX's breach of the Sale/Settlement Agreement reached on May 8, 2015, SourceProse has sustained damages in the amount of three million dollars ($3,000,000.00), plus interest, costs, and attorneys' fees

42. As a result of that breach, Plaintiff has sustained damages and is entitled to specific performance of the Agreement, or, in the alternative Plaintiff is entitled to an award of damages in the amount of $3,000,000.00 plus interest, fees, and costs.

43. As a further result of that breach, Plaintiff has been forced to retain attorneys and is, therefore, entitled to the recovery of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

## THIRD CAUSE OF ACTION:
## PROMISSORY ESTOPPEL

Plaintiff incorporates by reference the paragraphs set forth above and further alleges:

44. The Sale/Settlement Agreement described above constitutes a binding promise by RPX to purchase the Patents and settle the Patent Litigation.

45. RPX could reasonably foresee that SourceProse would rely on its promise to purchase the Patents and settle the Patent Litigation.

46. SourceProse substantially relied on RPX's promise when they informed opposing counsel in the Patent Litigation that SourceProse had entered into a confidential agreement with a third party (RPX), which would settle the Patent Litigation, and that SourceProse would stand down on discovery and because it would be working on a dismissal.

47. In reliance on the Sale/Settlement Agreement, SourceProse cancelled the deposition of a key witness in the Patent Litigation, which was unable to be rescheduled within the prescribed time and the witness became unavailable, substantially and materially prejudiced their ability to prosecute the Patent Litigation.

48. As a direct and proximate result of Defendant's acts as alleged above, Plaintiff has been harmed.

49. Injustice can only be avoided by enforcement of the Agreement.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(a) Judgment in Plaintiff's favor against Defendant for an amount in excess of $75,000.00 for breach of the Mutual Nondisclosure Agreement;

(b) For an order that Defendant and its agents specifically perform the terms of the Sale/Settlement Agreement and deliver to Plaintiff the amount of three million dollars ($3,000,000.00) in exchange for the Patents;

(c) In the event that the court does not order specific performance of the contract, for compensatory damages in the amount of $3,000,000.00 plus interest, fees and costs for breach of the Sale/Settlement Agreement;

(d) For reasonable and necessary attorneys' fees, costs and expenses as allowed under applicable Texas law, and pre- and post-judgment interest at the highest rate allowed by law; and

(e) For any other and further relief the court considers just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

| | |
|---|---|
| DATED:  April 26, 2016 | Respectfully submitted, |
| | /s/ William B. Federman |

William B. Federman (Bar No. 00794935)
wbf@federmanlaw.com
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:   (405) 239-2112
-and-
2926 Maple Avenue, Suite 200
Dallas, Texas  75201

ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**