United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SOURCEPROSE CORPORATION, | Case No. 16-cv-04089-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS AND GRANTING LEAVE TO AMEND** |
| RPX CORPORATION, | |
| Defendant. | Re: ECF No. 28 |

## INTRODUCTION

This case concerns an oral agreement for the sale of patents.[1] SourceProse alleges that it and RPX entered an agreement under which SourceProse would sell several patents to RPX.[2] But RPX allegedly backed out and refused to buy, resulting in an unfavorable settlement for SourceProse in a separate patent-infringement case.[3]

SourceProse then sued RPX and asserted breach-of-contract and promissory-estoppel claims.[4] RPX now moves to dismiss, arguing that SourceProse's claims allege an unenforceable oral patent

---

[1] *See generally* First Amended Compl. – ECF No. 25. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] *Id.* ¶¶ 35–37.

[4] *Id.* ¶¶ 38–51.

assignment and thus fail as a matter of law.[5] SourceProse dismisses its promissory-estoppel claim without prejudice but argues that its contract claim survives because the parties entered a valid agreement to assign the patents, not an assignment.[6]

The court can decide the matter without oral argument and vacates the February 2, 2017 hearing. *See* Civil L.R. 7-1(b). Because a patent assignment must be in writing, and because SourceProse inadequately pleads an agreement to assign, the court dismisses the contract claim but grants leave to amend.

## STATEMENT

RPX, "the leading provider of patent[-]risk solutions," buys "patents and patent rights and grants licenses to its clients to use the same."[7] SourceProse owns several patents and, in 2011, sued five mobile-telephone carriers for patent infringement, including AT&T, MetroPCS, Sprint, T-Mobile, and Verizon.[8] Separately, Google sued SourceProse seeking a declaration that it was not infringing SourceProse's patents.[9] The two patent cases were consolidated.[10]

Some defendants in the consolidated patent case were and are RPX's clients.[11] So RPX, through its Director of Acquisitions, approached SourceProse to discuss buying the patents and resolving the litigation.[12] RPX called "to discuss [SourceProse] selling the Patents to [RPX]," which would then license the patents to its client (the patent-infringement defendants), mooting that litigation.[13] The parties entered a nondisclosure agreement.[14] They then met to discuss the

---

[5] Motion to Dismiss – ECF No. 28.

[6] *See* Opposition – ECF No. 32 at 12.

[7] FAC ¶ 8.

[8] *Id.* ¶¶ 7, 9.

[9] *Id.* ¶ 10.

[10] *Id.* ¶ 11.

[11] *Id.* ¶ 12.

[12] *Id.* ¶ 13.

[13] *Id.* ¶¶ 13, 16.

[14] *Id.* ¶ 14.

United States District Court
Northern District of California

transaction, during which SourceProse "agreed to all material terms of the agreement proposed by [RPX]" — except the price.[15] RPX offered "$3 million to buy the Patents" but SourceProse demanded $4.2 million.[16] The parties negotiated the price and, after a few weeks, SourceProse called and accepted the $3 million offer on the same terms as previously agreed.[17]

RPX "acknowledged that an agreement had been reached between RPX and [] SourceProse with regard to selling the Patents, which would also resolve the Patent Litigation."[18] The parties discussed when to inform opposing counsel in the patent case: "[a]t [RPX]'s request, SourceProse agreed to refrain from making any announcements or filings" about the deal.[19] SourceProse told RPX, though, that it "would cease all further work on the Patent Litigation[ because it] could no longer continue the litigation" in light of the parties' agreement.[20] And it believed that it had an obligation to tell opposing counsel in the patent case about the agreement with RPX because it "had agreed to sell the Patents to RPX and settle" the case.[21] Indeed, SourceProse "no longer had the right to assert the claims made in the lawsuit."[22]

SourceProse eventually told the opposing counsel that it entered "a confidential agreement with a third party" that would settle the case.[23] It also said that it would "stand down on discovery and" work toward dismissing the case.[24] But, two days later, RPX informed SourceProse that the parties did not have an agreement and that it did not intend to perform.[25] RPX's refusal to honor

_____

[15] *Id.* ¶¶ 15–17.

[16] *Id.* ¶¶ 16–17.

[17] *Id.* ¶¶ 19–24.

[18] *Id.* ¶ 25.

[19] *Id.* ¶ 27.

[20] *Id.* ¶ 28.

[21] *Id.* ¶ 31.

[22] *Id.*

[23] *Id.* ¶ 33.

[24] *Id.*

[25] *Id.* ¶ 35.

United States District Court
Northern District of California

1    the agreement "prejudiced SourceProse's ability to continue the Patent Litigation" and resulted in

2    a less-favorable settlement of that case.[26]

3        SourceProse therefore sued RPX. It alleged three claims in its First Amended Complaint

4    ("FAC"): (1) breach of contract (nondisclosure agreement); (2) breach of contract (patent-sale

5    agreement); and (3) promissory estoppel. RPX moves to dismiss claims two and three.[27]

6    SourceProse agrees to dismiss its promissory-estoppel claim but opposes dismissal of its contract

7    claim.[28]

8

9                            **RULE 12(B)(6) LEGAL STANDARD**

10       Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a

11   "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may

12   be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under

13   a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

14   2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

15       A complaint must contain a "short and plain statement of the claim showing that the pleader is

16   entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

17   which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

18   (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to

19   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

20   formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

21   enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555

22   (internal citations omitted).

23       To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

24   accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

25

26   ───────────────

27   [26] *Id.* ¶ 37.

     [27] *See* Motion to Dismiss.

28   [28] *See* Opposition.

United States District Court
Northern District of California

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1.  The Court Dismisses the Breach-of-Contract Claim (Claim Two)

SourceProse alleges that RPX breached the parties' patent-sale agreement. The issue is whether SourceProse pleads an assignment of the patents (which must be in writing) or an agreement to assign the patents in the future (which need not be in writing).

"A patent is a creature of federal statute and may be transferred only according to the terms of the patent statutes." *United States v. Solomon*, 825 F.2d 1292, 1296 (9th Cir. 1987). Under those statutes, patent assignments must be in writing. 35 U.S.C. § 261; *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009); *Solomon*, 825 F.2d at 1296 ("[T]he necessity of a writing, like the necessity of an automobile certificate or a deed, to effect a valid transfer of a patent right has long been a matter of hornbook law."). But "[a] contract to assign a patent is legally distinguishable from an assignment of a patent." *Id.*; *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir. 1991) (distinguishing between an agreement to assign a patent in the future, which "may vest the promisee with *equitable* rights" in a patent, and an assignment, which grants legal title to a patent).

Unlike a patent assignment, an agreement to assign a patent — *i.e.* to assign a patent in the future — does not have a statutory basis and does not need to be in writing. *See Univ. Patents, Inc.*

United States District Court
Northern District of California

1    *v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991) (citing Lipscomb, Walker on Patents § 19:16

2    (3d ed. 1986)). An oral agreement to assign a patent may therefore be enforceable:

3         An oral agreement for the sale and assignment of the right to obtain a patent for an
          invention is not within the statute of frauds, nor within section 4898 of the Revised
4         Statutes, requiring assignments of patents to be in writing, and may be specifically
          enforced in equity, upon sufficient proof thereof.

5    *Dalzell v. Dueber Watch-Case Mfg. Co.*, 149 U.S. 315, 320 (1893). So, although "an assignment

6    must be in writing, an agreement to assign may be oral." 60 Am. Jur. 2d Patents § 895 (2016); 71

7    Am. Jur. 2d Specific Performance § 178 (2016) ("Parol executory contracts to assign patent rights

8    may also be enforced in equity although the statutes of the United States provide that the

9    assignment itself must be in writing.").

10        The parties agree that there is no written contract but dispute the type of agreement asserted in

11   the FAC.[29] RPX asserts that SourceProse alleges an assignment which, absent a writing, is

12   unenforceable.[30] But SourceProse argues that no writing was required because the FAC alleges an

13   agreement to assign, not an assignment.[31] Accepting as true SourceProse's position that it alleges

14   (or intended to allege) an agreement to assign, it does so insufficiently. It must adequately plead

15   the existence and terms of the agreement to put RPX on notice of the claim. In this case, that

16   means identifying whether the agreement is an assignment or an agreement to assign.

17        "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of

18   the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*,

19   69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d

20   239, 252 (1989)) (internal quotations omitted). "A plaintiff fails to sufficiently plead the terms of

21   the contract if he does not allege in the complaint the terms of the contract or attach a copy of the

22   contract to the complaint." *Id.* "While it is unnecessary for a plaintiff to allege the terms of the

23   alleged contract with precision, the Court must be able generally to discern at least what material

24   obligation of the contract the defendant allegedly breached." *Id.* (citation omitted).

25

26   _____

27   [29] *See* Opposition at 7, 11.

     [30] Motion to Dismiss at 11–13.

28   [31] *See* Opposition at 7, 11.

     ORDER — No. 16-cv-04089-LB                    6

United States District Court
Northern District of California

But here, the court cannot tell if the material obligation is the assignment of the patents or the promise to assign them in the future. The only identifiable term is that the parties allegedly agreed to the "sale" of the patents for $3 million. But the term "sale," without identifying the timing of the transfer (*i.e.* immediately or in the future), is legally ambiguous in the context of assigning patent rights. *See, e.g.*, *DDB Techs., LLC v. MLB Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008) ("[W]hether an assignment of patent rights in an agreement such as the one in this case is automatic, requiring no further act on the part of the assignee, or merely a promise to assign depends on the contractual language."); *compare FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1570 (Fed. Cir. 1991) ("agrees to grant and does hereby grant"), *with Arachnid*, 929 F.2d at 1576 ("all rights . . . will be assigned"). This deficiency is evidenced by SourceProse's post-pleading assertion that the agreement would "ultimately" transfer the rights to RPX and its clients. The FAC does not contain such language indicating a future obligation instead of an immediate transfer.

It is clear that SourceProse believed the parties' agreement would resolve the patent litigation. But it is not clear if this is because, as RPX argues, the alleged agreement immediately divested SourceProse of its interest in the patents, or merely because the parties agreed that SourceProse would, for example, dismiss the case.[32]

Because the FAC ambiguously alleges the agreement's terms, particularly in this patent-assignment context, the court dismisses the breach-of-contract claim (claim two). As discussed below, however, the court grants leave to amend.

## 2.   The Court Grants Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Empls. v. Sonoma Cnty.,* 708 F.3d 1109, 1118 (9th Cir. 2013). Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should

---

[32] *See* Reply – ECF No. 33 at 6; FAC ¶¶ 13, 16.

not be granted." *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party, and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

Here, SourceProse seeks to amend its complaint to: (1) add allegations in support of its current express-contract claim, and (2) assert a new implied-contract theory of recovery.[33] RPX argues in response only that amendment would be futile.[34]

First, the court grants SourceProse leave to amend its express-contract claim. RPX argues that leave should be denied because, under federal law, SourceProse cannot allege an enforceable oral assignment. But accepting for now that SourceProse's claim is based on an agreement to assign, not an assignment, RPX has not shown that amendment to support that claim would be futile.

Second, the court grants leave to amend to allege an implied-in-fact contract. The court agrees with RPX that SourceProse's cited implied-in-fact contract cases appear inapplicable. For example, SourceProse does not allege facts suggesting that the hired-to-invent doctrine applicable in employment relationships is workable here. *See Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403 (Fed. Cir. 1996); *Univ. Patents*, 762 F. Supp. 1212. The cases allowing transfer by operation of law similarly appear inapplicable to support SourceProse's alleged agreement to assign. *See Sky Techs.*, 576 F.3d at 1380 (allowing the transfer of a patent by foreclosure). But the record does not clearly preclude SourceProse from alleging an implied-in-fact contract, either. The court prefers to address the issue in the context of an amended complaint and a fully briefed challenge.

---

[33] *See* Opposition at 13.

[34] Motion to Dismiss at 18–19; Reply at 2, 7–8.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="text-align: left; writing-mode: vertical">United States District Court
Northern District of California</div>

### CONCLUSION

The court grants RPX's motion to dismiss and dismisses SourceProse's contract claim (claim two), but the court grants leave to amend. The court also dismisses SourceProse's promissory-estoppel claim. SourceProse must file an amended complaint within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: January 26, 2017

_____

LAUREL BEELER
United States Magistrate Judge