1  Robert S. Green (State Bar No. 136183)
   James Robert Noblin (State Bar No. 114442)
2  **GREEN & NOBLIN, P.C.**
   2200 Larkspur Landing Circle, Suite 101
3  Larkspur, CA  94939
   Telephone:  (415) 477-6700
4  Facsimile:  (415) 477-6710
   Email:  gnecf@classcounsel.com
5
   William B. Federman (pro hac vice)
6  **FEDERMAN & SHERWOOD**
   2926 Maple Avenue, Suite 200
7  Dallas, Texas  75201
   Telephone:  (214) 696-1100
8  Facsimile:   (214) 740-0112
   Email: wbf@federmanlaw.com
9  -and-
   10205 N. Pennsylvania Ave.
10 Oklahoma City, OK 73120
   Telephone:  (405) 235-1560
11 Facsimile:   (405) 239-2112

12 Attorneys for Plaintiff
   SOURCEPROSE CORPORATION

13

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16  SOURCEPROSE CORPORATION          Case No.:  3:16-cv-04089-LB
                                     (transferred from the Western District of
17                 Plaintiff,        Texas, Austin Division)

18  vs.
                                     **PLAINTIFF'S RESPONSE IN**
19  RPX CORPORATION                  **OPPOSITION TO MOTION OF**
                                     **DEFENDANT RPX CORPORATION TO**
20                 Defendant.        **DISMISS PLAINTIFF'S SECOND**
                                     **AMENDED COMPLAINT;**
21                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT**
22                                   **THEREOF**

23
                                     Date        May 4, 2017
24                                   Time:       9:30 a.m.
                                     Judge:      Hon. Laurel Beeler
25                                   Courtroom:  C, 15th Floor

26
                                     Action Filed:  April 26, 2016
27                                   Trial Date:    Not Yet Set

28

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ....................................................................................................1

3    II.   BURDEN OF PROOF RESPECTING A RULE 12(b)(6) MOTION ...................................2

4    III.  IT WOULD BE IMPROPER TO DISMISS PLAINTIFF'S CLAIM FOR BREACH

5           OF THE MUTUAL NONDISCLOSURE AGREEMENT .....................................................3

6    IV.  PLAINTIFF STATED A VIABLE CAUSE OF ACTION FOR BREACH OF AN

7           AGREEMENT TO ASSIGN .......................................................................................5

8    V.   PLAINTIFF'S CLAIM FOR BREACH OF SETTLEMENT AGREEMENT IS A
           VALID CLAIM .....................................................................................................8

9    VI.  CONCLUSION ....................................................................................................11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

# TABLE OF AUTHORITIES

**Federal Cases**

*Aki v. University of California Lawrence Berkeley Nat'l Lab.*
(N.D. Calif. Apr. 17, 2015) No. 13-cv-4027, 2015 WL 1778481 ....................................10

*Am. Tel. & Tel. Co. v. Integrated Network Corp.*
(Fed. Cir. 1992) 972 F.2d 1321........................................................................................5

*Arachnid, Inc. v. Merit Indus., Inc.*
(Fed. Cir. 1991) 939 F.2d 1574.....................................................................................6, 7

*Aro Corp. v. Allied Witan Co.*
(6th Cir. 1976) 531 F.2d 1368 ..........................................................................................8

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544............................................................................................................2

*Bergstrom v. Sears, Roebuck & Co.*
(D. Minn. 1982) 532 F.Supp. 923 .....................................................................................9

*Callen v. Pa. R.R. Co.*
(1948) 332 U.S. 625............................................................................................................9

*Campbell v. Adkisson Sherbert and Assoc.*
(4th Cir. 2013) 546 Fed. Appx. 146 ................................................................................10

*Conley v. Gibson*
(1957) 355 U.S. 41..............................................................................................................2

*Dalzell v. Dueber Watch-Case Mfg. Co.*
(1893) 149 U.S. 315.......................................................................................................5, 6

*Filmtec Corp. v. Allied-Signal, Inc.*
(Fed. Cir. 1991) 939 F.2d 1568........................................................................................6

*Fontana v. Haskin*
(9th Cir. 2001) 262 F.3d 871 .............................................................................................2

*Fulgham v. Wofford*
(N.D. Miss. Jan. 9, 2015) No. 13-cv-182, 2015 WL 134365 ........................................8, 9

*Gompper v. VISX, Inc.*
(9th Cir. 2002) 298 F.3d 893 .............................................................................................3

*Hensley v. Alcon Laboratories, Inc.*
(4th Cir. 2002) 277 F.3d 535 ..........................................................................................10

*In re Cylink Sec. Litig.*
(N.D. Cal. 2001) 178 F.Supp.2d 1077 ..............................................................................3

*Langan v. United Servs. Auto. Ass'n,*
(N.D. Cal. 2014) 69 F.Supp.3d 965 ..................................................................................7

*Langan v. United Servs. Auto. Ass'n.*
    (N.D. Cal. 2014) 69 F.Supp.3d 965 ...........................................................6

*Mid–South Towing Co. v. Har-Win, Inc.*
    (5th  Cir. 1984) 733 F.2d 386 .................................................................9

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*
    (9th Cir. 2003) 320 F.3d 920 ................................................................3

*Page v. Horel*
    (N.D. Calif. Oct. 28, 2011) No. C-09-289, 2011 WL 5117562 .........................................9

*Sagana v. Tenorio*
    (9th Cir. 2004) 384 F.3d 731 .................................................................2

*Silicon Image, Inc. v. Genesis Microchip, Inc.*
    (E.D. Vir. 2003) 271 F.Supp.2d 840 ..........................................................8

*Teets v. Chromalloy Gas Turbine Corp.*
    (Fed. Cir. 1996) 83 F.3d 403 .................................................................5

**State Cases**

*Alderson v. Houston*
    (1908) 154 Cal. 1 ...........................................................................4

*Cohn v. Cohn*
    (1942) 20 Cal.2d 65 .........................................................................4

*Columbia Pictures Corp. v. DeToth*
    (1948) 87 Cal.App.2d 620 ...................................................................8

*Dr. Leevil, LLC v. Westlake Health Care Center*
    (2017) 9 Cal.App.5th 450 ...................................................................4

*People ex rel Lockyer v. R.J. Reynolds Tobacco Co.*
    (2003) 107 Cal.App.4th 516 .................................................................4

*Scudder v. Perce*
    (1911) 159 Cal. 429 .........................................................................4

**Federal Statutes**

FED.R.CIV.P. 8(a) ...........................................................................2

FED.R.CIV.P. 12(b)(6).........................................................................2

35 U.S.C. § 261 ...........................................................................5

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1   Plaintiff SourceProse Corporation submits this Opposition to Defendant's Motion to

2   Dismiss, filed 03/09/2017 (Dkt. No. 43) (the "Motion" or "Defendant's Motion").  In support of

3   this Opposition, SourceProse submits the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

4

**I.   INTRODUCTION**

5

6   Plaintiff SourceProse ("Plaintiff" or "SourceProse") is a software development

7   company, based in Dallas, Texas, that has developed certain mapping technology and

8   methodology that is protected by the patents at issue (the "Patents").  *Second Amended*

9   *Complaint*, filed 02/09/2017, Dkt. No. 41, ("SAC"), ¶¶ 6-7.  Defendant RPX Corporation

10  ("Defendant" or "RPX"), based in San Francisco, California, is in the business of acquiring

11  patents and patent rights and licensing them to its various clients and helping its clients avoid or

12  resolve patent litigation by the acquisition of patents and patent rights.  *Id.* ¶ 8.

13  In 2011, litigation involving the Patents was initiated in the Western District of Texas

14  between SourceProse, several of RPX's clients, and Google (the "Patent Litigation").

15  SAC ¶¶ 9-12.  In February 2015, RPX approached counsel for SourceProse about acquiring the

16  Patents and resolving the Patent Litigation.  *Id.* ¶ 13.  Shortly thereafter, SourceProse and RPX

17  entered into a Mutual Nondisclosure Agreement ("NDA") to permit the free exchange of

18  information necessary to further discussions regarding RPX purchasing the Patents and

19  resolving the Patent Litigation.  *Id.* ¶14.  In April 2015, representatives of RPX and SourceProse

20  reached an agreement as to all the essential terms of a sale of the Patents except for the sales

21  price. *Id.* ¶¶ 15-16.  Ultimately, after a number of negotiation sessions, on May 8, 2015,

22  representatives of SourceProse and RPX reached an agreement on the terms of the sale of the

23  Patents to RPX, including the sales price ($3 million), and dismissal of the Patent Litigation (the

24  "Agreement").  *Id.* ¶¶ 17-22.

25  In accordance with the Agreement, SourceProse stood down in the Patent Litigation but,

26  at RPX's request, held off on advising opposing counsel and the Court so that RPX's upper

27  management could first announce the agreement to RPX's members.   SAC ¶¶ 23-25.  On May

28  11, 2015, RPX's representative acknowledged the existence of an agreement in writing (a text

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1    message) but said that RPX had not yet announced the deal to its members.  *Id.* ¶ 26.  After

2    letting RPX know that SourceProse could not continue holding off on advising opposing

3    counsel that a deal had been done, SourceProse advised opposing counsel in the Patent

4    Litigation that an agreement had been reached with a third party (RPX) that resolved the case,

5    and cancelled the deposition of an important witness from Google.  *Id.* ¶¶ 28-30.  On May 14,

6    2015, RPX – for the first time – denied the existence of a deal and refused follow through with

7    its obligations.  *Id.* ¶¶ 31-32.

8            In its Motion, Defendant asserts that Plaintiff's First Cause of Action, for breach of the

9    NDA, fails because RPX was entitled to share information with its members.  Motion at 6-7.

10   Defendant's argument, however, ignores certain express provisions of the NDA that underly the

11   claim making dismissal inappropriate.  *See* Section III, *infra*.  Next, Defendant argues that

12   Plaintiffs' Second and Third Causes of Action, for breach of the agreement to buy the Patents

13   and settle the Patent Litigation, fail for lack of a writing.  Motion at 7-9.  However, Defendant's

14   overly restrictive view of the law regarding "agreements to assign", Motion at 9-11, is faulty,

15   making dismissal of Plaintiff's Second Cause of Action improper.  *See* Section IV, *infra*.

16   Moreover, settlement agreements – even those involving settlement of patent claims – do not

17   have to be in writing so Plaintiff's Third Cause of Action should not be dismissed.  The Motion

18   should be denied and Defendant should respond to the substance of Plaintiff's claims.

19   **II.      BURDEN OF PROOF RESPECTING A RULE 12(b)(6) MOTION**

20           Under the liberal pleading requirements of FED.R.CIV.P. 8(a), "a plaintiff need only

21   provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"

22   *Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004).  Rule 8(a) does "not require a claimant to

23   set out in detail the facts upon which he bases his claim."  *Conley v. Gibson*, 355 U.S. 41, 47

24   (1957).  Rather, the Second Amended Complaint need only give RPX "fair notice" of the claim

25   and the "grounds upon which it rests."  *See Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555

26   (2007); *Conley*, 355 U.S. at 47; and *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001).

27           A motion to dismiss for failure to state a claim shall be denied unless it "appears beyond

28   doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

-2-

1   to relief." *In re Cylink Sec. Litig.*, 178 F.Supp.2d 1077, 1079 (N.D. Cal. 2001).  The Court must

2   thus take SourceProse's well-pled allegations as true and liberally construe the Second

3   Amended Complaint most favorably to SourceProse.  *No. 84 Employer-Teamster Joint Council*

4   *Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

5   "District courts should consider all the allegations in their entirety, together with any reasonable

6   inferences that can be drawn therefrom."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir.

7   2002).

8
    ## III.   IT WOULD BE IMPROPER TO DISMISS PLAINTIFF'S CLAIM FOR
9   ##         BREACH OF THE MUTUAL NONDISCLOSURE AGREEMENT

10          The stated purpose of the NDA was to allow the parties, SourceProse and RPX, to share

11  "certain confidential technical and business information" in order to "explore a business

12  opportunity of mutual interest."  Mutual Nondisclosure Agreement ("NDA") at ¶ 1 of Exhibit 1

13  to Defendant RPX Corporation's Request for Judicial Notice in Support of Motion to Dismiss

14  Plaintiff's Second Amended Complaint, filed 03/19/2017, Dkt. No. 44.[1]  The "business

15  opportunity of mutual interest" was the sale of the Patents to RPX and resolution of the Patent

16  Litigation.  SAC ¶¶ 13-14.  The NDA specifically states:

17          Each party agrees not to use any Confidential Information of the other party for
18          any purpose except to evaluate and engage in discussions concerning a potential
            business opportunity or relationship between the parties.  Each party agrees not
19          to disclose any Confidential Information of the other party to third parties or to
            such party's employees or agents, except to those employees or agents of the
20          receiving party who are required to have the information in order to evaluate or
            engage in discussions concerning the contemplated business opportunity or
21          relationship.

22  NDA, ¶ 3(a).  Google was not a party to the NDA and, therefore, is a third party.  Further,

23  Google is not an agent or employee of RPX who was required to have the information to

24  evaluate or engage in discussions with regard to the potential business opportunity.

25  Accordingly, RPX's disclosure of Confidential Information to Google is a breach of the NDA.

26          The paragraph that RPX relies upon for its argument that SourceProse cannot assert a

27  claim against RPX for breach of the NDA due to RPX sharing information with Google, NDA ¶

28
    ---
    [1] Plaintiff agrees that the Court may take Judicial Notice of the NDA.

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1    3(b), is inapplicable.  That entire paragraph relates to assertions of notice of patent infringement,

2    which is not the issue in this case.  Moreover, while the NDA prevents SourceProse from

3    asserting, in patent litigation, that RPX or its members were on notice that they were infringing

4    upon SourceProse's patents by virtue of having exchanged "Evaluation Information" pursuant to

5    the agreement, it does not allow RPX to share "Confidential Information" with its members.

6        "Confidential Information" and "Evaluation Information" are not the same.  For

7    example, "Confidential Information" does not include patent numbers[2] but "Evaluation

8    Information" does.[3]  These terms must be "construed according to the ordinary and usual

9    meaning of the language unless an intent that they should be interpreted otherwise plainly

10   appears."  *Cohn v. Cohn*, 20 Cal.2d 65, 69 (1942) (*citing Scudder v. Perce*, 159 Cal. 429 (1911);

11   and *Alderson v. Houston*, 154 Cal. 1 (1908)).  Thus, particularly in light of ¶ 3(a), which states

12   that only such employees of the receiving party as are *required* to have the information to

13   evaluate and engage in discussions concerning the deal may receive Confidential Information

14   and prohibits the distribution of Confidential Information to third parties *at all*, it is clear that,

15   while RPX *might* be permitted to share "Evaluation Information" with its members, RPX was

16   not permitted to share Confidential Information with its members.  *See People ex rel Lockyer v.*

17   *R.J. Reynolds Tobacco Co.*, 107 Cal.App.4[th] 516, 526 (2003) ("The language in a contract must

18   be construed in the context of that instrument as a whole") (internal citations omitted).

19   SourceProse alleges that RPX shared Confidential Information with Google and other third-

20   parties. SAC ¶ 27.  This is a breach of the NDA, ¶ 3(a).  Accordingly, dismissal of the First

21   Cause of Action would be improper.

22       Alternatively, at most, the NDA could be considered ambiguous as to what, if any,

23   information RPX could share with its members.  Ambiguities would be construed against the

24   drafter.  *See Dr. Leevil, LLC v. Westlake Health Care Center*, 9 Cal.App.5th 450 (2017)

25   ("contract ambiguities are construed against the drafter")(citations omitted).  The NDA was

26

27   ─────────────────
     [2] "Confidential information shall not, however, include any information which…(vi) consists of
     patent numbers disclosed by Counterparty to RPX."  NDA ¶ 2.

28   [3] Evaluation Information is defined as "information related to this business opportunity
     (including but not limited to patent numbers)."  NDA ¶ 3(b).

1  drafted by RPX so ambiguities are construed against it.  Accordingly, RPX has not shown that

2  there is no set of facts under which SourceProse would be entitled to recovery.  Dismissal of

3  Plaintiff's First Cause of Action would be improper.

4
## IV.   PLAINTIFF STATED A VIABLE CAUSE OF ACTION FOR BREACH OF AN
5         AGREEMENT TO ASSIGN

6         Defendant's motion reiterates its previously rejected argument that federal law requires

7  "Patent Sales" to be in writing (Motion at 8) and then tries to save its meritless position by

8  arguing that "'Agreements to Assign' only Apply to the Transfer of Future Patent Rights."

9  *Id.* at 9.  Both of these arguments are without merit.  By changing the language to "patent sales,"

10  rather than assignment of a patent, Defendant's first argument takes liberty with the language of

11  the statute, which provides that patents "shall be assignable in law by an instrument in writing."

12  35 U.S.C. §261.  This stretch from assignment of a patent into "patent sales" is meant by

13  Defendant to blur the line recognized by this Court, which stated that a contract to assign a

14  patent is legally distinguishable from an assignment of a patent.  Order Granting the

15  Defendant's Motion to Dismiss and Granting Leave to Amend, Dkt. No. 38 ("Order").  As the

16  Court further articulated, "An oral agreement to assign a patent may therefore be

17  enforceable. . . ."  *Id.* at 6, quoting *Dalzell v. Dueber Watch-Case Mfg. Co.,* 149 U.S. 315, 320

18  (1893).  This distinction disposes of Defendant's argument that Plaintiff's breach of contract

19  claim should be dismissed for failure to allege a written assignment.

20         Defendant then gives lip service to the distinction recognized by this Court, but makes

21  the illogical and unfounded claim that "agreements to assign" only apply to the transfer of future

22  rights.  The first problem with this argument is that none of the cases cited by Defendant

23  actually say that.  To the contrary, what the cases do say is that the validity of such agreements

24  is determined under state contract law.  *See Am. Tel. & Tel. Co. v. Integrated Network Corp.*,

25  972 F.2d 1321, 1324 (Fed. Cir. 1992) (holding that the breach of contract claims relating to

26  ownership of patent rights are governed by state law, not patent law); and *Teets v. Chromalloy*

27  *Gas Turbine Corp.,* 83 F.3d 403, 407 (Fed. Cir. 1996) (applying state law to an implied-in-fact

28  contract claim to assign patent).  Thus, state law determines whether or not the oral agreement is

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1    valid, not federal patent law.  This is not an "exception" to the requirement that assignments be

2    in writing as Defendant suggests.  It is simply not covered by the statute requiring assignments

3    to be in writing, as the Supreme Court clearly stated in *Dalzell.*[4]

4            The ambiguity which this Court identified in the First Amended Complaint was with

5    regard to the term for the timing of the transfer of the Patents, more specifically whether the

6    transfer was to occur immediately or in the future. Order at 7.  To address this ambiguity in the

7    terms, Plaintiff added detail regarding the terms that were agreed to in the April 13 meeting,

8    including identifying events that were to occur in the future, such as dismissing the litigation

9    and completing the documentation necessary to assign the patents.  SAC ¶ 16.  Plaintiff then

10   alleges the steps taken on May 8, 2015 that constituted the offer and acceptance of the amount

11   to be paid by RPX, along with the other terms that had been previously agreed upon.  *Id.* ¶¶ 20-

12   21.[5]  Plaintiff then alleges that the agreement was binding on the parties at that point and that the

13   dismissal of the litigation and the assignment of the patent and the related licensing terms

14   "would take place in the (near) future."  *Id.* ¶ 22.  These allegations clarify the ambiguity

15   identified by the Court, placing this case squarely within the confines of *Arachnid, Inc. v. Merit*

16   *Indus., Inc.,* 939 F.2d 1574, 1576 (Fed. Cir. 1991)(plaintiff alleged patent rights "will be

17   assigned"), and not under *Filmtec Corp. v. Allied-Signal, Inc.,* 939 F.2d 1568 (Fed. Cir.

18   1991)("agrees to grant and does hereby grant").

19           In its Motion, Defendant chose to hold on tightly to the errant notion that this agreement

20   to assign in the future had to be in writing, rather than address the ambiguity identified in the

21   Order.  As such, Defendant waived that argument, or at least seriously missed the target.  At one

22   point in the middle of a different argument, Defendant does suggest that alleging the assignment

23   would occur in the future is too vague to support an enforceable contract.  However, that is

24   exactly the term that was being validly enforced in *Arachnid* ("all rights will be assigned").  That

---

[4] Defendant's argument seems to implicitly admit that the matter is simply one of state contract law, in that its argument on this point meanders into a citation of *Langan v. United Servs. Auto. Ass'n.* 69 F.Supp.3d 965, 979-980 (N.D. Cal. 2014), for the requirements to plead a breach of contract.

[5] Plaintiff requests leave to amend Paragraph 41 of the charging allegations which incorrectly states that "RPX would pay $3 million to RPX," where it should say "RPX would pay $3 million to SourceProse."

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1    language was sufficient to support a claim for declaratory judgment that was upheld by the

2    Federal Circuit in an unpublished opinion.  *See Arachnid*, 936 F.2d at 1576.

3          The one case that Defendant cites on this point does not support its position.  *See Langan*

4    *v. United Servs. Auto. Ass'n,* 69 F.Supp.3d 965, 979-80 (N.D. Cal. 2014).  While it is true that

5    *Langan* states that a complaint must plead the terms of a contract, as this Court noted in its

6    Order, it does not state that the date in the future on which the assignment of patents would be

7    executed is a term that must be pleaded.  *Arachnid* says to the contrary.  Moreover, *Langan* goes

8    on to state that it is unnecessary to "allege the terms of the alleged contract with precision" and

9    that it need only be enough for the court to "be able generally to discern as least what material

10   obligation of the contract the defendant allegedly breached."  *Id.*  Here, the term that was

11   breached was the failure to pay $3 million.  And the question the Court posed about whether the

12   assignment was to be immediate or to occur in the future has now been clearly answered in the

13   SAC.

14         Defendant's final two points regarding the Second Cause of Action are its assertions that

15   a promise to dismiss the lawsuit would be redundant and that under some scenarios a license

16   back to the patent holder would be legally void.  These appear to be factual arguments with

17   regard to what the terms of the agreement are, rather than appropriate topics for a motion to

18   dismiss.  Further, these are not valid points.  Defendant says that it would be redundant for

19   Plaintiff to agree to dismiss the suit because as a result of the alleged assignment, Plaintiff's

20   right to sue would be extinguished.  This simply makes no sense.  At the time of the Agreement,

21   RPX wanted two things.  It wanted the Patent Litigation to end and it wanted the Patents.  At

22   that time, the most pressing issue was dismissal of the Patent Litigation because it was actively

23   ongoing, with deadlines.  No reasonable party would negotiate for assignment of the Patents but

24   leave it to the parties and a court to decide that the assignment also extinguished pending

25   litigation, when the selling party is willing to expressly agree to both as occurred here.

26   Defendant's second point that a nonexclusive licensee has no standing to sue, even if true and

27   applicable here (which it is not), only goes to the validity of one term of the Agreement.  It does

28   not support a motion to dismiss the entire claim for breach of contract.  To the contrary, it

-7-

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

1   confirms that Plaintiff has now alleged the terms of the contract in sufficient detail that the

2   parties and the Court can determine from the SAC what those terms are and what legal issues

3   arise out of the contract.  Defendant's motion to dismiss the Second Cause of Action should be

4   denied.

5   **V.      PLAINTIFF'S CLAIM FOR BREACH OF SETTLEMENT AGREEMENT IS A**

6   **         VALID CLAIM**

7          Plaintiff alleges that it reached an agreement with Defendant for the settlement of a

8   federal patent case.  SAC ¶ 48.[6]  "The solemnity with which the federal courts approach

9   settlement agreements cannot be overstated."  *Silicon Image, Inc. v. Genesis Microchip, Inc.*,

10  271 F.Supp.2d 840 (E.D. Vir. 2003).  On that point, it has been said that:

11              Agreements settling litigation are solemn undertakings, invoking a duty upon the
12              involved lawyers, as officers of the court, to make every reasonable effort to see
                that the agreed terms are fully and timely carried out.  Public policy strongly
13              favors settlement of disputes without litigation.  Settlement is of particular value
                in patent litigation, the nature of which is often inordinately complex and time
14              consuming.   Settlement  agreements  should  therefore  be  upheld  whenever
                equitable and policy considerations so permit.
15

16  *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

17         The mere fact that the terms of the agreement were not reduced to a signed writing does

18  not make the agreement unenforceable.  *See Columbia Pictures Corp. v. DeToth*, 87 Cal.App.2d

19  620, 629 (1948) ("The cases are legion to the effect that when the respective parties orally agree

20  upon all of the terms and conditions of an agreement with the mutual intention that it shall

21  thereupon become binding, the mere fact that a formal written agreement to the same effect is to

22  be prepared and signed does not alter the binding validity of the oral agreement").  This result

23  does not change simply because the subject of the agreement is a federal patent lawsuit.  *See*

24  *Fulgham v. Wofford*, No. 13-cv-182, 2015 WL 134365 (N.D. Miss. Jan. 9, 2015)(attached as

25  _____

26  [6] Defendant's motion addresses implied in fact contracts, but does not address the concept of
    enforcing a settlement agreement, other than to assert that the Second and Third Causes of
27  Action allege identical terms.  However, the law applicable to enforcing settlement terms is in
    some cases different than the law generally applicable to a simple agreement to assign patents in
28  the future.  Since this Agreement included both aspects, Plaintiff alleged the claims separately
    and in this section addresses the law applicable to enforcing settlement agreements.

Exhibit A).  All that must be shown is that "[t]he agreement to settle the patent claims and other related claims [was] entered into voluntarily and knowingly."  *Fulgham* at *3.  Here, the alleged facts leave no doubt that the agreement was entered into knowingly and voluntarily.  *See* SAC, *generally*.  "***Such settlements are not required to be reduced to writing, and oral settlement agreements are enforceable***."  *Fulgham* at *3 (emphasis added).  Rather, "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity."  *Id. quoting Mid–South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 392 (5th  Cir. 1984) (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)).  *See also Page v. Horel*, No. C-09-289, 2011 WL 5117562 (N.D. Calif. Oct. 28, 2011) (holding that a party "cannot avoid the settlement agreement on the ground that it has not yet been reduced to writing").  Where the parties have reached an oral agreement as to all material terms, the settlement of a patent case will be enforced:

> In this case, the parties plainly intended to be bound by the oral agreement reached on October 24, 1980.  All the material terms were agreed upon.  All of the terms Cardinal contends were left unresolved deal with insubstantial matters.  The lawsuit was considered settled as of October 24, 1980, and the settlement was not contingent upon formal execution of a written memorial of the agreement.

*Bergstrom v. Sears, Roebuck & Co.*, 532 F.Supp. 923, 932-933 (D. Minn. 1982).

The only basis for invalidating the Agreement between SourceProse and RPX that RPX offers is that the agreement was not reduced to writing. This is not a valid reason for not enforcing the agreement.  Here, the parties had reached an agreement as to all material terms on May 8, 2015 and intended the terms be immediately binding upon them.  SAC ¶¶ 21-22. Indeed, SourceProse immediately "stood down" in the Patent Litigation.  *Id.* ¶ 23.  Thus, it is clear from the pleading that the Agreement was not contingent upon the execution of formal, written settlement agreement.  Rather, the subsequent execution of certain documents was to be the fulfillment of the obligations that the parties *already had* under the oral agreement.  *Id.* ¶ 22.

In a case with a fact pattern similar to this case, the Fourth Circuit found that the District Court did not err in finding that the parties had reached a valid, enforceable settlement agreement:

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

The district court found that the parties had settled on the material terms of the agreement during the phone conversation on November 22, 2011. There is no clear error in this finding.  Prospect never expressed an intention that the November 22, 2011 agreement be contingent upon the approval of its senior management.  And the parties never expressly stated, nor is there evidence in the record, that their agreement was dependent on the execution of a writing. Prospect represented to both ASA and the court that a settlement had been reached.  The only thing that changed between Prospect receiving the signed draft of the agreement and the settlement check, and its sending the January 17, 2012 letter informing ASA's counsel that there was no settlement, was the fact that Prospect's senior management expressed dissatisfaction with the settlement amount.  Prospect largely admitted as much in a hearing before the district court.

*Campbell v. Adkisson Sherbert and Assoc.*, 546 Fed. Appx. 146, 153 (4th Cir. 2013).

Here, the facts alleged show that SourceProse and RPX had reached an agreement on the material terms during the phone conversation on May 8, 2015.  SAC ¶ 21.  Elliott, who had authority to negotiate on behalf of RPX, did not indicate that RPX's agreement was contingent upon approval from management, RPX's members, or anyone else.  *Id.* ¶¶ 21-22.  Indeed, Elliott simply asked Faucett to hold off on *announcing the deal* so that RPX could do it.  *Id.* ¶¶ 23, 26.  Such a statement is not consistent with someone who did not believe that a deal had been reached.  Apparently, the only the thing that changed between the May 8, 2015 phone call and Elliott's email of May 14, 2015, denying the existence of a deal, *id.* ¶ 32, was that one of RPX's members – who was not a party to the agreement – expressed dissatisfaction with the agreement. *Id.* ¶ 27.  That does not mean a valid, enforceable agreement does not exist between SourceProse and RPX.

As stated by the Fourth Circuit, "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement," and the fact that the Agreement is not in writing does not render it unenforceable.  *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (internal citations omitted).  *See also Aki v. University of California Lawrence Berkeley Nat'l Lab.*, No. 13-cv-4027, 2015 WL 1778481 (N.D. Calif. Apr. 17, 2015) ("the law does not allow someone to rescind a contract simply because he no longer likes the terms to which he agreed") (citations omitted).  Plaintiff alleges sufficient facts to establish the existence of a valid, enforceable agreement between RPX and

SourceProse to settle the Patent Litigation and RPX provided the Court with no legal

justification for not enforcing that agreement.  Accordingly, dismissal of the Third Cause of

Action should be denied.

VI.     CONCLUSION

        SourceProse respectfully requests that this Court deny Defendant's Motion to Dismiss,

allow Plaintiff to amend to correct the error in paragraph 41, and order Defendant to file an

answer.


DATED:  April 6, 2017                          **GREEN & NOBLIN, P.C.**



                                               By:    /s/ Robert S. Green
                                                      Robert S. Green

                                               James Robert Noblin
                                               2200 Larkspur Landing Circle, Suite 101
                                               Larkspur, CA  94939
                                               Telephone:  (415) 477-6700
                                               Facsimile:  (415) 477-6710
                                               Email:  gnecf@classcounsel.com

                                               William B. Federman (*pro hac vice*)
                                               Federman & Sherwood
                                               2926 Maple Avenue, Suite 200
                                               Dallas, Texas  75201
                                               Telephone:  (214) 696-1100
                                               Facsimile:  (214) 740-0112
                                               Email:  wbf@federmanlaw.com
                                               -and-
                                               10205 N. Pennsylvania Ave.
                                               Oklahoma City, OK 73120
                                               Telephone:  (405) 235-1560
                                               Facsimile:   (405) 239-2112

                                               Attorneys for Plaintiff
                                               SOURCEPROSE CORPORATION

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB