UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SOURCEPROSE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>RPX CORPORATION,<br><br>Defendant. | Case No. 16-cv-04089-LB<br><br>**ORDER GRANTING IN PART THE DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 43 |

## INTRODUCTION

This case concerns an oral agreement for the assignment of several patents.[1] SourceProse alleges that it and RPX entered an oral agreement under which SourceProse would assign the patents to RPX for $3 million and thus settle an underlying patent-infringement case.[2] But RPX allegedly backed out of the agreement and refused to buy the patents, harming SourceProse's position in the underlying litigation.[3] SourceProse then sued RPX and asserts three breach-of-contract claims in its Second Amended Complaint ("SAC"). RPX moves to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6).

---

[1] *See* Second Amended Compl. ("SAC") – ECF No. 41. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See id.* ¶¶ 16, 21.

[3] *See id.* ¶¶ 32–34.

ORDER — No. 16-cv-04089-LB

The court held a hearing on the motion on May 4, 2017. The court grants in part the motion and dismisses without prejudice SourceProse's claim for breach of the parties' nondisclosure agreement. SourceProse's other claims survive.

## STATEMENT

RPX is a company that "acquires patents and patent rights and grants licenses to its clients to use them."[4] In doing so, "'[it] has helped clients achieve 1,000+ dismissals from active litigations and avoid thousands of patent lawsuits altogether.'"[5] SourceProse is a software development company that owns several patents.[6] In 2011, it filed a patent-infringement suit against five mobile-telephone carriers, including AT&T, MetroPCS, Sprint, T-Mobile, and Verizon.[7] Separately, Google sued SourceProse seeking a declaration that it was not infringing SourceProse's patents.[8] The two patent cases were consolidated.[9]

Several of the parties to the consolidated patent case were RPX's clients, including some of the mobile-telephone carriers and Google.[10] (The rest of the carrier-defendants were Google's clients.[11]) So RPX, through its Director of Acquisitions, called SourceProse's attorney "to discuss resolving the [consolidated] Patent Litigation," a plan through which SourceProse would "convey[] rights to the Patents to RPX for the benefit of its clients."[12] The parties then entered a mutual nondisclosure agreement ("NDA") "to permit the free exchange of certain information necessary to further discussions regarding the sale of the Patents."[13]

---

[4] SAC ¶ 8.
[5] *Id.*
[6] *Id.* ¶¶ 6–7.
[7] *Id.* ¶ 9.
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 11.
[10] *Id.* ¶ 12.
[11] *Id.*
[12] *Id.* ¶ 13.
[13] *Id.* ¶ 14.

The parties then met to discuss the patents and related litigation.[14] At the meeting, RPX proposed the following agreement:

   a. RPX would pay SourceProse an agreed upon amount of money (the "Sales Price");
   b. SourceProse would drop the Patent Litigation and execute/file the appropriate paperwork with the Court to effectuate a dismissal with prejudice;
   c. SourceProse would assign the Patents to RPX and execute documents sufficient to effectuate the assignment; and
   d. RPX would grant SourceProse a limited license of one year's duration whereby SourceProse could, in its discretion, file suit against any non-RPX clients for pre-assignment patent infringements and execute any documents that were necessary to effectuate the license.[15]

SourceProse agreed to those terms.[16] But the parties did not agree on the price.[17]

The parties negotiated the sales price over the next several weeks.[18] RPX offered, by phone, $3 million to buy the patents.[19] SourceProse approved the price and its attorney called RPX and accepted the $3 million offer.[20] "[RPX] acknowledged that [it] and SourceProse had reached an agreement."[21] "The parties intended that the [a]greement should be binding upon them immediately but that written documentation necessary to effectuate the parties' obligations, such as dismissal of the Patent Litigation and assignment/licensing of the Patent[s], would take place in the (near) future."[22]

SourceProse and RPX then discussed when to tell opposing counsel in the patent case about the deal.[23] SourceProse intended to "immediately inform opposing counsel and the Court" of the

---

[14] *Id.* ¶ 15.
[15] *Id.* ¶ 16.
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶¶ 17–21.
[19] *Id.* ¶ 19.
[20] *Id.* ¶¶ 20–21.
[21] *Id.* ¶ 21.
[22] *Id.* ¶ 22.
[23] *See id.* ¶¶ 23–30.

agreement.[24] But RPX "asked SourceProse [to] hold off so that RPX's upper management could 'officially announce' the [a]greement to RPX's members."[25] SourceProse agreed to wait but confirmed that it "would cease all further work on the Patent Litigation."[26] Three days later, on the day SourceProse intended to inform opposing counsel, RPX called SourceProse and said that "Google was trying to back out of 'the deal,' and that [it] was concerned that Google may have withdrawn its support of the [a]greement."[27] RPX did not announce the deal to its members.[28]

The next day, SourceProse "notified opposing counsel in the Patent Litigation" that it had entered "a confidential agreement with a third party [that] would settle the [case]."[29] SourceProse also notified counsel that it "was standing down on discovery and would be preparing the paperwork necessary for the dismissal of the case."[30] Indeed, SourceProse cancelled the deposition of a key Google witness who later became unavailable.[31]

SourceProse then emailed RPX "providing wire transfer instructions for the $3 million."[32] RPX responded, though, by stating that "there was no agreement between RPX and SourceProse, and that RPX did not intend to perform."[33] SourceProse alleges that RPX's refusal to perform (and its breach of the parties' NDA) "materially and substantially" harmed its ability to continue in the consolidated patent litigation, which was dismissed two months later.[34]

SourceProse therefore sued RPX. It asserts three claims in its SAC: (1) breach of the parties' NDA; (2) breach of the agreement to assign the patents; and (3) breach of the agreement to settle

---

[24] *Id.* ¶ 23.
[25] *Id.*
[26] *Id.* ¶¶ 23, 25.
[27] *Id.* ¶ 27.
[28] *See id.* ¶¶ 28–29.
[29] *Id.* ¶ 30.
[30] *Id.*
[31] *Id.* ¶¶ 30, 33.
[32] *Id.* ¶ 31.
[33] *Id.* ¶ 32.
[34] *Id.* ¶¶ 34–25.

1   the patent litigation.[35] SourceProse seeks both damages and specific performance of the parties'

2   agreement to assign.[36] RPX moves to dismiss the SAC under Rule 12(b)(6).[37]

**RULE 12(B)(6) LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are

---

[35] *Id.* ¶¶ 36–54.

[36] *See* Prayer.

[37] Motion to Dismiss – ECF No. 43; Opposition – ECF No. 48; Reply – ECF No. 49.

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Breach of the Agreement to Assign

SourceProse alleges that RPX breached the parties' oral agreement to assign the patents.[38] The issue is whether SourceProse can properly allege an oral "agreement to assign" in this context.

"A patent is a creature of federal statute and may be transferred only according to the terms of the patent statutes." *United States v. Solomon*, 825 F.2d 1292, 1296 (9th Cir. 1987). Under those statutes, patent assignments must be in writing. 35 U.S.C. § 261; *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009); *Solomon*, 825 F.2d at 1296 ("[T]he necessity of a writing, like the necessity of an automobile certificate or a deed, to effect a valid transfer of a patent right has long been a matter of hornbook law."). But "[a] contract to assign a patent is legally distinguishable from an assignment of a patent." *Id.*; *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir. 1991) (distinguishing between an agreement to assign a patent in the future, which "may vest the promisee with *equitable* rights" in a patent, and an assignment, which grants legal title to a patent).

Unlike a patent assignment, an agreement to assign a patent — *i.e.* to assign a patent in the future — does not have a statutory basis and does not need to be in writing. *See Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991) (citing Lipscomb, Walker on Patents § 19:16 (3d ed. 1986)). An oral agreement to assign a patent — or an agreement to assign the right to obtain a patent — may be specifically enforced. *See Dalzell v. Dueber Watch-Case Mfg. Co.*, 149 U.S. 315, 320 (1893). So, although "an assignment must be in writing, an agreement to assign may

---

[38] SAC ¶¶ 40–46.

be oral." 60 Am. Jur. 2d Patents § 895 (2016); 71 Am. Jur. 2d Specific Performance § 178 (2016) ("Parol executory contracts to assign patent rights may also be enforced in equity although the statutes of the United States provide that the assignment itself must be in writing.").

RPX argues that the "[c]ases recognizing 'agreements to make an assignment' are limited to agreements involving rights in future inventions" in the employment context.[39] Indeed, the cases they cite (and many of the cases that the court found) concern employers' rights in employees' inventions. That makes sense: employees innovate in the workplace, and courts are often asked to evaluate those inventive rights. And, in that context, courts have recognized at least three situations where an employer has rights in an employee's patent. First, the parties may expressly agree that the employee will assign his or her rights to the employer. *See Teets v. Chromalloy Gas Turbine Co.*, 83 F.3d 403, 407 (Fed. Cir. 1996); *Univ. Patents*, 762 F. Supp. at 1219. Second, absent such an agreement, "employers may still claim an employee's inventive work where the employer specifically hires or directs the employee to exercise inventive faculties." *Teets*, 83 F.3d at 407 (noting that this analysis requires the court to "determine if the parties entered an implied-in-fact contract to assign patent rights"); *Univ. Patents*, 762 F. Supp. at 1219–20. And third, even without an express or implied-in-fact contract, "an employer may obtain a shop right in employee inventions" — the right to use the "invention without liability for infringement" — "where it has contributed to the development of the invention." *Teets*, 83 F.3d at 407; *Univ. Patents*, 762 F. Supp. at 1220 (citing *United States v. Dubilier*, 289 U.S. 178, 187–89 (1933)).

RPX asserts that these cases are distinguishable and thus inapplicable.[40] It points out that there is no employment relationship: the transaction at issue here was between two entities. And it argues that those cases merely "acknowledge that parties sometimes need to agree to transfer patent rights not yet in existence" (*i.e.* for an employee's yet-to-be-developed inventions), but that here, the patent rights existed at the time of the alleged agreement to assign.

---

[39] Motion to Dismiss at 13.

[40] *Id.* at 13–15.

Those points are well taken: this is not an employment case about future inventive rights. But those cases do not necessarily foreclosure the oral "agreement to assign" alleged here. Here, SourceProse alleges that it and RPX orally agreed that SourceProse would later assign the patents and thus settle the underlying litigation:

    a. RPX would pay SourceProse an agreed upon amount of money (the "Sales Price");[41]

    b. SourceProse would drop the Patent Litigation and execute/file the appropriate paperwork with the Court to effectuate a dismissal with prejudice;

    c. SourceProse would assign the Patents to RPX and execute documents sufficient to effectuate the assignment; and

    d. RPX would grant SourceProse a limited license of one year's duration whereby SourceProse could, in its discretion, file suit against any non-RPX clients for pre-assignment patent infringements and execute any documents that were necessary to effectuate the license.[42]

SourceProse also alleges that the parties intended to later complete the necessary written documentation to assign the patents.[43] In other words, SourceProse alleges that it orally agreed that it would (but did not then) assign the patents to RPX. The alleged agreement, then, is not an assignment but an oral executory agreement to assign the patents in the future, a legally distinguishable concept. *See Solomon*, 825 F.2d at 1296; 71 Am. Jur. 2d Specific Performance § 178 (2016) ("Parol executory contracts to assign patent rights may also be enforced in equity although the statutes of the United States provide that the assignment itself must be in writing."). As such, the agreement does not fall within § 261 and does not need to be in writing.

The assignment itself, however, must be. So, for SourceProse to compel RPX to specifically perform under that agreement — *i.e.* to force RPX to pay for the patent assignment — SourceProse will need to show: "'(1) the inadequacy of [its] legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to

---

[41] A value later agreed to be $3 million. (SAC ¶¶ 17–21.)

[42] SAC ¶ 16.

[43] *Id.* ¶ 22.

ORDER — No. 16-cv-04089-LB     8

know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract.'" *See Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, No. 15-cv-03839-HSG, 2015 WL 7753267, at *2 (N.D. Cal. Dec. 2, 2015) (quoting *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 71, 575 (1983)). Only after SourceProse satisfies these requirements, and after a written assignment is executed, will the patents transfer. These hurdles — *i.e.* the definiteness of the assignment's terms and the execution of a written assignment — are sufficient to protect § 261's policies and purposes. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (explaining that § 261's writing requirement provides certainty).

In sum, although the employment cases (and other implied-in-fact and operation-of-law cases) appear factually inapplicable, RPX does not identify a rule precluding the oral "agreement to assign" alleged here. And, some cases have enforced oral agreements to assign patents outside of the employment context (albeit, for future patent rights). *See In re C and M Investments of High Point Inc.*, No. 13-10661, 2016 WL 3126457 (M.D.N.C. May 25, 2016) (compelling shareholder to execute patent assignment to corporation); *Dickman v. Vollmer*, 303 Wis. 2d 241 (2007) (oral agreement to assign patents to a joint venture). Absent authority to the contrary, the agreement to assign falls outside the scope of § 261's writing requirement.

For the purposes of this motion, the court also does not find too vague SourceProse's assertion that the assignment would occur in the "(near) future."[44] The court reads that allegation as nothing more than SourceProse's indication that the alleged agreement did not itself assign the patents, but instead called for a separate assignment.

SourceProse's claim for breach of the agreement to assign the patents survives.

### 2. Breach of the Agreement to Settle the Underlying Litigation

SourceProse alleges that RPX breached the parties' agreement to settle the underlying consolidated patent litigation.[45] This claim is identical to its claim for breach of the agreement to

---

[44] Motion to dismiss at 14.

[45] SAC ¶¶ 47–54.

ORDER — No. 16-cv-04089-LB    9

assign the patents: both rest on the exchange of $3 million for the assignment and the resulting dismissal of the patent case.[46] RPX therefore moves to dismiss the claim for the same reason as the agreement-to-assign claim: it argues that — however styled — the patent assignment must be in writing and so the oral settlement agreement (involving the assignment) must fail.[47]

The court denies RPX's argument for the same reasons as discussed above — the parties' agreement falls outside the scope of § 261 and does not require a writing. The court makes two observations, though. First, the two claims as alleged are virtually identical and thus potentially redundant. Second, despite SourceProse's characterization, this is not a settlement agreement in the true sense. RPX was not a party to the underlying litigation and none of the parties to that case were party to the agreement to settle the litigation (though they are potential third-party beneficiaries). Nevertheless, the claim survives the current motion to dismiss.

### 3. Breach of the Nondisclosure Agreement

SourceProse asserts that "RPX breached the NDA by sharing [its] confidential information with Google and, perhaps, others."[48] The issue is whether SourceProse has adequately pled a breach of the NDA.

The elements of a breach of contract claim under California law are:[49] "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)) (internal quotations omitted). "A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a

---

[46] *See* SAC ¶¶ 41, 48.

[47] *See* Motion to Dismiss at 11–16; Reply at 6–8.

[48] SAC ¶¶ 36–39.

[49] The NDA is governed by California law. (Nondisclosure Agreement – ECF No. 44-1, § 12.)

copy of the contract to the complaint." *Id.* "While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Id.* (citation omitted).

Here, SourceProse alleges that it and RPX entered the NDA "to permit the free exchange of certain information necessary to further discussions regarding the sale of the Patents."[50] It does not attach the NDA to the complaint or plead its terms, but RPX submits the NDA along with its motion to dismiss.[51] "As a general rule, [a district court] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But under the incorporation-by-reference doctrine, the court may (but it does not have to) consider documents outside of the pleadings, without converting the motion to dismiss into a motion for summary judgment, where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel*, 393 F.3d at 1076. SourceProse's claim depends on the contents of the NDA and the parties do not dispute its authenticity. The court therefore considers the NDA.

Under the NDA, RPX and SourceProse agreed "not to use any Confidential Information of the other party for any purpose except to evaluate and engage in discussions concerning a potential business opportunity or relationship between the parties."[52] The parties also agreed "not to disclose any Confidential Information of the other party to third parties."[53] The NDA also defines "Evaluation Information" as "any information related to this business opportunity (including, but not limited to patent numbers)," and states that neither RPX's receipt of such information nor its communication of such information to its members "shall constitute pre-litigation notice" of

---

[50] SAC ¶ 14.

[51] *See* Request for Judicial Notice – ECF No. 44.

[52] Nondisclosure Agreement § 3(a).

[53] *Id.*

1  potential infringement.[54] SourceProse "release[d] and waive[d] all claims for damages based on
2  such Evaluation Information against RPX and all RPX Members."[55]

3  SourceProse asserts that, after the parties entered the agreement, RPX informed it "that Google
4  was trying to back out of 'the deal'" and "may have withdrawn its support of the Agreement."[56]
5  "This was the first time SourceProse received any indication that Google was involved [in] the
6  deal," and led it "to believe that RPX had shared SourceProse's confidential information with
7  Google and, perhaps, others in violation of the NDA."[57] SourceProse alleges that it suffered
8  "damages in excess of seventy-five thousand dollars" as a result of the breach.[58]

9  These allegations, alone, do not state a claim for breach of the NDA. The only factual
10 allegation is that Google tried to back out of the deal, implying that RPX told Google about the
11 agreement. But Google is an RPX client[59] and the NDA contemplates RPX sharing Evaluation
12 Information with its members (such as Google).[60] SourceProse moreover "waive[d] all claims for
13 damages based on such Evaluation Information" (which includes "any information related to this
14 business opportunity").[61] SourceProse asserts that RPX shared its "Confidential Information" — a
15 separately defined term — but does not allege facts plausibly showing that RPX shared
16 Confidential Information (which is prohibited) instead of Evaluation Information (which is
17 permitted). Thus, although RPX may not have "shown that there is no set of facts under which
18 SourceProse would be entitled to recovery,"[62] SourceProse's allegations fail to raise its claim
19 above the speculative level. *See Twombly*, 550 U.S. at 555. The court therefore dismisses the

---

[54] *Id.* § 3(b).
[55] *Id.*
[56] SAC ¶ 27.
[57] *Id.* ¶¶ 27, 38.
[58] *Id.* ¶ 39.
[59] *Id.* ¶ 12.
[60] Nondisclosure Agreement § 3(b).
[61] *Id.*
[62] Opposition at 9.

claim for breach of the NDA. The court will, however, give leave to amend the claim because this is the first time that RPX challenged it.

## CONCLUSION

The court grants in part and denies in part RPX's motion to dismiss. The court dismisses SourceProse's claim for breach of the NDA but grants leave to amend within 21 days of this order. The other two claims survive.

**IT IS SO ORDERED.**

Dated: May 5, 2017

LAUREL BEELER
United States Magistrate Judge