Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**
2926 Maple Avenue, Suite 200
Dallas, Texas  75201
Telephone:  (214) 696-1100
Facsimile:   (214) 740-0112
Email: wbf@federmanlaw.com
-and-
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile:   (405) 239-2112

Attorneys for Plaintiff,
SOURCEPROSE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOURCEPROSE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>RPX CORPORATION,<br><br>Defendants. | Case No.:  3:16-cv-04089-LB<br>(transferred from the Western<br>District of Texas, Austin Division)<br><br>**THIRD AMENDED COMPLAINT**<br><br>**<u>JURY DEMAND</u>** |

Plaintiff SourceProse Corporation, ("Plaintiff" or "SourceProse"), by and through its attorneys, submit this Second Amended Complaint and hereby makes the following allegations and claims against Defendant RPX Corporation ("Defendant" or "RPX").

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

2.    Venue is proper in this Court pursuant to an Order on entered July 18, 2016 by the United States District Court for the Western District of Texas, Austin Division, Case No. 1:16-CV-516-LY, transferring this action to this Court.

3.    This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of the State of California and maintains its headquarters in San Francisco, California.

## II.    THE PARTIES

4.    Plaintiff is a corporation organized and existing under the laws of the State of Texas.  Plaintiff has its principal place of business in Dallas, Texas.  Based upon the foregoing, Plaintiff is a citizen of the State of Texas.

5.    Defendant is a corporation organized and existing under the laws of the State of California.  Defendant has its principal place of business in San Francisco, California.  Based upon the foregoing, Defendant is a citizen of the State of California.

## III.    FACTUAL BACKGROUND

6.    SourceProse is a software development company that was begun after the enactment of the National Flood Insurance Reform Act of 1994, to develop solutions to hardware and software issues associated with scanning paper maps, indexing them and georeferencing these maps so that any given geographic address would be displayed in the appropriate location on what became synchronized raster and vector maps so that lenders could obtain the certification of whether structures used as collateral for the loan were in a flood zone as required by the Act.  The technology and methods developed by SourceProse are useful not

-1-

only for providing flood data and flood hazard certification but for layering many other types of data over the geographical data, with applications in many different industries. SourceProse protected itself by applying for and obtaining numerous patents for the innovations and processes they had designed and invented. Their patent portfolio now has a broader scope, covering a large market presence, and adds considerable value to an industry that has become, in retrospect, a large part of the daily lives of many people.

7. SourceProse is, and was at all times relevant herein, the owner of the following patents:

a. U.S. Patent No. 6,631,326, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on October 7, 2003;

b. U.S. Patent No. 6,678,615, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on January 13, 2004;

c. U.S. Patent No. 6,842,698, entitled "SYSTEM AND METHOD FOR PERFORMING FLOOD ZONE CERTIFICATIONS," duly and legally issued on January 11, 2005;

d. U.S. Patent 7,038,681, entitled "SYSTEM AND METHOD FOR GEOREFERENCING MAPS," duly and legally issued on May 2, 2006;

e. U.S. Patent No. 7,142,217, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on November 26, 2006;

f. U.S. Patent No. 7,148,898, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on December 12, 2006;

g. U.S. Patent No. 7,161,604, entitled "SYSTEM AND METHOD FOR SYNCHRONIZING RASTER AND VECTOR MAP IMAGES," duly and legally issued on January 9, 2007;

h. U.S. Patent No. 7,167,187, entitled "SYSTEM AND METHOD FOR GEOREFERENCING DIGITAL RASTER MAPS USING A GEOREFERENCING FUNCTION," duly and legally issued on January 23, 2007; and

i. U.S. Patent No. 7,190,377, entitled "SYSTEM AND METHOD FOR GEOREFERENCING DIGITAL RASTER MAPS WITH RESISTANCE TO POTENTIAL ERRORS," duly and legally issued on March 13, 2007.

(Hereafter, referred to, collectively, the "Patents"). SourceProse has full and exclusive right to bring suit to enforce the Patents.

-2-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

8.     RPX acquires patents and patent rights and grants licenses to its clients to use the same.  According to RPX's website:  "RPX has helped clients achieve 1,000+ dismissals from active litigations and avoid thousands of patent lawsuits altogether."

9.     On February 11, 2011, SourceProse, as plaintiff,  filed Case No. 1:11-cv-00117 in the Western District of Texas against five (5) major mobile telephone carriers, AT&T, Inc. ("AT&T"), MetroPCS Communications, Inc. ("MetroPCS"), Sprint Nextel Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), and Cellco Partnership, d/b/a Verizon Wireless ("Verizon") for infringement of the Patents ("the SourceProse Case").

10.     On July 26, 2011, Google, Inc. ("Google"), as plaintiff, filed Case No. 1:11-cv-00637 in the Western District of Texas against SourceProse, seeking a declaration that Google and its clients were not infringing on Patents ("the Google Case").

11.     On September 22, 2011, the SourceProse Case and the Google Case were consolidated into one action, ("the Patent Litigation").

12.     Some of the defendants in the Patent Litigation are or were clients of RPX (the "RPX Defendants") and the rest of the defendants were clients of Google (the "Other Defendants") (collectively, "the Patent Defendants").  Google was also a client of RPX.

13.     On February 25, 2015, Ryan Elliott ("Elliott"), Director of Acquisitions for RPX, called Houston, Texas attorney, Matthew Prebeg, ("Prebeg"), SourceProse's attorney of record in the Patent Litigation, to discuss resolving the Patent Litigation by conveying rights to the Patents to RPX for the benefit of its clients.

14.     On March 5, 2015, SourceProse and RPX entered into a Mutual Nondisclosure Agreement, ("NDA") to permit the free exchange of certain information necessary to further discussions regarding the sale of the Patents.  A true and correct copy of the NDA is attached hereto as Exhibit 1.  The NDA prohibited the parties from sharing "Confidential Information" of the other party to "third parties or such party's employees or agents, except to those employees or agents of the receiving party who are required to have the information in order to evaluate or engage in discussions concerning the contemplated business opportunity or relationship."

-3-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

00102637.000.doc

15. On April 13, 2015, Prebeg and Christopher Faucett ("Faucett"), another of SourceProse's counsel in the Patent Litigation, met with Elliott in San Francisco, California to discuss the Patents and the Patent Litigation, (the "April 13 Meeting"). Eric Olsen, RPX's Senior Vice President of Acquisitions ("Olsen"), was also present for part of this meeting.

16. During the April 13 Meeting, RPX proposed an agreement, the essential terms of which were as follows:

a. RPX would pay SourceProse an agreed upon amount of money (the "Sales Price");

b. SourceProse would drop the Patent Litigation and execute/file the appropriate paperwork with the Court to effectuate a dismissal with prejudice;

c. SourceProse would assign the Patents to RPX and execute documents sufficient to effectuate the assignment; and

d. RPX would grant SourceProse a limited license of one year's duration whereby SourceProse could, in its discretion, file suit against any non-RPX clients for pre-assignment patent infringements and execute any documents that were necessary to effectuate the license.

(These are referred to hereafter as the "Essential Terms"). SourceProse agreed to the Essential Terms. Thus, the only issue left to be agreed upon between SourceProse and RPX was the Sales Price.

17. Between April 13, 2015 and May 8, 2015, representatives of RPX and SourceProse discussed the Sales Price by telephone numerous times.

18. On Friday, May 8, 2015, from Texas, Faucett called Elliott on telephone at or around 2:00 pm Central Standard Time (the "2:00 Phone Call"). During this call, Faucett informed Elliott that SourceProse's Board of Directors was standing by, in Texas, to make a decision on an agreement with RPX and needed to know the exact amount that RPX would offer as the Sales Price to complete the deal. Faucett told Elliott that if the Board accepted the Sales Price offer (the Essential Terms having already been agreed to), SourceProse would

-4-

00102637.000.doc

immediately stand down in the Patent Litigation and announce to opposing counsel and the Court that an agreement had been reached, which resolved the case.

19.    During the 2:00 Phone Call, Elliott stated that he was authorized to and did offer, on behalf of RPX, a $3 million Sales Price along with the Essential Terms that had already been agreed to by the parties.

20.    On May 8, 2015, Faucett conveyed RPX's offer to SourceProse's Board of Directors, who then authorized Faucett to accept the $3 million offer and the Essential Terms that had already been agreed to by the parties.

21.    At approximately 2:30 pm Central Standard Time on May 8, 2015, from Texas, Faucett called Elliott back and told him that SourceProse accepted the $3 million Sales Price and the Essential Terms (the "2:30 Phone Call").  Elliott acknowledged that RPX and the SourceProse had reached an agreement (the "Agreement").

22.    The parties intended that the Agreement should be binding upon them immediately but that written documentation necessary to effectuate the parties' obligations, such as dismissal of the Patent Litigation and assignment/licensing of the Patent, would take place in the (near) future.

23.    During the 2:30 Phone Call, Faucett told Elliott that he would immediately inform opposing counsel and the Court in the Patent Litigation of the Agreement.  But, Elliott asked SourceProse hold off so that RPX's upper management could "officially announce" the Agreement to RPX's members.  Elliott explained that representatives of RPX's members were meeting then in San Francisco and that RPX would make the announcement during the meeting. SourceProse agreed not to make any announcements or filings with the Court until May 11, 2015 but, in accordance on the Agreement, SourceProse confirmed with RPX that SourceProse would cease all further work on the Patent Litigation.

24.    Shortly after the 2:30 Phone Call, Elliott called back Faucett, in Texas, and informed him that RPX's Chief Operating Officer had given consent for SourceProse to inform opposing counsel in the Patent Litigation of the Agreement, but that RPX's Chief Executive Officer still needed to give his authorization for the announcement.

-5-

25. Pursuant to RPX's request, SourceProse refrained from making any announcements or filings with the Court in the Patent Litigation until May 11, 2015 and, in reliance on the Agreement, SourceProse did stand down from further work on the Patent Litigation.

26. On the morning of Monday, May 11, 2015, Faucett sent a text message, from Texas, to Elliott to inquire as to whether RPX had officially announce the Agreement. Elliott replied by text message that he would let Faucett know as soon as the announcement was officially made. Elliott gave no indication at that time that RPX did not believe that an Agreement had been reached. Faucett agreed to wait for one more day to announce the Agreement

27. On the afternoon of May 11, 2015, Elliott called Faucett, in Texas, to inform him that Google was trying to back out of "the deal," and that Elliott was concerned that Google may have withdrawn its support of the Agreement.

28. Based upon statements made by Elliott, SourceProse understood that if Google back out of the deal, Apple probably would, too. This led SourceProse to conclude that RPX had shared SourceProse's Confidential Information – including but possibly not limited to terms, conditions, and pricing information – with Google, Apple, and, (perhaps), others in violation of the NDA.

29. On Tuesday, May 12, 2015, Faucett sent an e-mail to Elliott, from Texas, which was also copied to Olsen, stating SourceProse's belief that it was under an obligation to inform opposing counsel in the Patent Litigation of the Agreement, under which SourceProse had agreed to sell and assign the Patents to RPX and to settle the Patent Litigation (the "May 12 Email"). In light of upcoming deposition and deadlines in the Patent Litigation, Faucett advised Elliott that, even without an announcement by RPX, unless he received a response by 5:00 pm Central Standard Time on May 12, 2015, SourceProse would announce the Agreement to opposing counsel in the Patent Litigation.

30. In response to the May 12, 2015 e-mail, Elliott called Faucett, in Texas, to inform him that RPX had still made no official announcement and that SourceProse would not

-6-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

be hearing anything further from RPX by the deadline set forth in the May 12 Email. SourceProse received no other response. Again, Elliott did *not* inform Faucett that RPX was denying the existence of the Agreement.

31.    On May 12, 2015, Plaintiff, having received no instruction or request from RPX to the contrary, notified opposing counsel in the Patent Litigation that SourceProse had entered into a confidential agreement with a third party which would settle the Patent Litigation, and that SourceProse was standing down on discovery and would be preparing the paperwork necessary for the dismissal of the case. SourceProse also cancelled the deposition of Jim Brooks, one of Google's witnesses who had knowledge on a key issue in the Patent Ligation, which had been set for May 14, 2015.

32.    On May 14, 2015, Faucett e-mailed Elliott, providing wire transfer instructions for the $3 million Sales Price.

33.    On May 14, 2015, Elliott responded to Faucett's email stating, for the first time, that there was no agreement between RPX and SourceProse, and that RPX did not intend to perform. Elliott further asked that Faucett refrain from contacting RPX in the future.

34.    By the time that RPX informed SourceProse that it was backing out of the deal, Mr. Brooks, the witness whose deposition SourceProse cancelled in reliance on the Agreement, was unavailable and there was no way for SourceProse to reschedule Mr. Brooks' deposition before the June 1, 2015 discovery deadline in the Patent Litigation.

35.    RPX's disclosure of information to Google (and, perhaps, others) in violation of the NDA and refusal to honor the terms of the Agreement caused damage to SourceProse and materially and substantially prejudiced SourceProse's ability to continue the Patent Litigation.

36.    The Patent Litigation was dismissed on July 9, 2015.

### FIRST CAUSE OF ACTION:
### BREACH OF MUTUAL NONDISCLOSURE AGREEMENT

37.    Plaintiff incorporates by reference the paragraphs set forth above and further alleges as follows:

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

00102637.000.doc

38.    Pursuant to the NDA, RPX was prohibited from sharing SourceProse's confidential information with third parties.

39.    RPX breached the NDA by sharing SourceProse's Confidential Information – including, at least, terms, conditions and pricing information – with third parties – Google, Apple, and, perhaps, others.

40.    SourceProse suffered damages in excess of seventy-five thousand dollars ($75,000) as a result of the breach.

## SECOND CAUSE OF ACTION:
## BREACH OF AGREEMENT TO ASSIGN

41.    Plaintiff incorporates by reference the paragraphs set forth above and further alleges as follows:

42.    On May 8, 2015, RPX and SourceProse reached an agreement whereby RPX would pay $3 million to SourceProse and would receive, in exchange, an assignment of the Patents and dismissal of the Patent Litigation.  It was understood that the assignment would take place through the execution of appropriate documents in the (near) future.

43.    RPX acknowledged the existence of the Agreement, in writing, on May 11, 2015, when Elliott, its Director of Acquisitions, sent a text to Faucett, SourceProse's Texas, attorney, saying that he would let Faucett know as soon as RPX had announced the Agreement to its members and did not denying the existence of the Agreement.

44.    RPX breached the Agreement by refusing to pay the agreed upon $3 million to SourceProse.

45.    As a result of that breach, Plaintiff has sustained damages in excess of seventy-five thousand dollars ($75,000) and is entitled to an award of damages in the amount of said damages plus interest, costs, and attorneys' fees.

46.    As a further result of the breach, Plaintiff has been forced to retain attorneys and entitled to the recovery of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code and/or other applicable law.

-8-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

## THIRD CAUSE OF ACTION:
## BREACH OF AGREEMENT TO SETTLE THE PATENT LITIGATION

47.    Plaintiff incorporates by reference the paragraphs set forth above and further alleges as follows:

48.    On May 8, 2015, SourceProse and RPX reached a settlement agreement in which RPX would pay $3 million to SourceProse and would receive, in exchange, dismissal of the Patent Litigation and an assignment of the Patents.

49.    SourceProse partially performed its obligations under the settlement agreement by immediately standing down in the Patent Litigation, informing opposing counsel in the Patent Litigation that a settlement had been reached, cancelling the scheduled deposition of one of RPX's client's employees, and dismissing the Patent Litigation.

50.    RPX breached the settlement agreement by refusing to pay the $3 million Sales Price to SourceProse.

51.    Because RPX breached the agreement, as set forth in paragraph 40, SourceProse has not yet execute the documents necessary to assign the Patents to RPX.  SourceProse has, however, dismissed the Patent Litigation with prejudice.

52.    SourceProse stands ready to execute the documents necessary to assign the Patents to RPX upon receipt of the $3 million.

53.    As a result of RPX's breach of the Agreement, Plaintiff has sustained damages and is entitled to specific performance of the Agreement, or, in the alternative Plaintiff is entitled to an award of damages in the amount of $3 million plus interest, costs, and attorneys' fees.

54.    As a further result of the breach, Plaintiff has been forced to retain attorneys and is entitled to the recovery of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code and/or other applicable law.

//

//

//

-9-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

00102637.000.doc

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(a)    Judgment in Plaintiff's favor against Defendant for an amount in excess of $75,000 for breach of the Mutual Nondisclosure Agreement;

(b)    For an order that Defendant and its agents specifically perform the terms of the Agreement and deliver to Plaintiff the amount of three million dollars ($3,000,000) in exchange for executed documents assigning the Patents to RPX;

(c)    In the event that the court does not order specific performance of the contract, judgment in Plaintiff's for compensatory damages in the amount of $3,000,000 plus interest, costs, and attorneys' fees;

(d)    For reasonable and necessary attorneys' fees, costs and expenses as allowed under Texas or other applicable law, and pre- and post-judgment interest at the highest rate allowed by law; and

(e)    For any other and further relief the court considers just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

DATED:  May 26, 2017                          **GREEN & NOBLIN, P.C.**


By:     /s/ Robert S. Green
            Robert S. Green

James Robert Noblin
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

William B. Federman (*pro hac vice*)
Federman & Sherwood
2926 Maple Avenue, Suite 200
Dallas, Texas  75201
Telephone:  (214) 696-1100
Facsimile:   (214) 740-0112
Email:  wbf@federmanlaw.com

-10-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB

00102637.000.doc

-and-
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:   (405) 239-2112

Attorneys for Plaintiff,
SOURCEPROSE CORPORATION

Attorneys for Plaintiff

**ATTORNEY LIEN CLAIMED**

-11-

THIRD AMENDED COMPLAINT
CASE NO. 3:16-cv-04089-LB